JACOBS, Gdshp. In re v PORTER.

Ohio Appeals, 2nd Dist., Franklin Co.

No. 3273. Decided Sept. 18th, 1941.

Griffith & Griffith, Columbus, Power & Barton, Columbus, and Baker, Hostetler & Patterson, Cleveland, for appellant.

Charles S. Druggan, Columbus, Henry A. Reinhard, Columbus, for appellee.

## OPINION

By HORNBECK, J.

This is an action in which the appellant seeks the reversal of the judgment of the Court of Common Pleas dismissing an appeal from an order of the Probate Court appointing a guardian of the person and estate of William E. Jacobs, an alleged incompetent.

On March 26, 1937, an application was made for the appointment of a guardian of William E. Jacobs, a man then 93 years of age and alleged to be the owner of an estate of the value of, at least, $500,000.00. The application proceeded to hearing and the testimony in the case was largely that of two doctors. The evidence was such that the Court made an entry to the effect that being satisfied that William E. Jacobs "is incompetent, in that by reason of advanced age, improvidence, mental and physical disability and infirmity, he is incapable of taking proper care of himself and his property"; that he is of the age of 93 years and the court being satisfied that it is necessary that a guardian be appointed it is ordered that J. Lawrence Porter be appointed guardian.

A motion for new trial was filed and overruled.

On June 13, 1940, the Common Pleas Court made an entry to the effect that the cause came on to be heard on the motion of appellees to dismiss the appeal on questions of law and fact. The Court thereupon found said motion well taken and ordered that the appeal be dismissed.

Notice of appeal from this decision, upon questions of law, was filed within proper time and the case is now before this Court for review of the order of the Common Pleas Court dismissing the appeal.

The errors assigned are that the Court of Common Pleas erred in sustaining the motion of appellees to dismiss the appeal from the order of the Probate Court and dismissing said appeal.

A bill of exceptions is filed disclosing the evidence in the Probate Court upon which the appointment was made. It would, therefore, appear that the only question before this Court is whether or not the Court below erred in dismissing the appeal on questions of law and fact.

284

Sec. 10507-1 GC, effective January 1, 1932, in the particulars germane to the question presented, is substantially the same as former §10989 This former section made provision for the appointment of a guardian for an idiot, or imbecile, or lunatic or an incompetent by reason of advanced age or mental or physical disability or infirmity. The former section, however, did not more particularly define the term, "incompetent". It is now defined in §10507-1, as "any person who by reason of advanced age, improvidence, or mental or physical disability or infirmity, is incapable of taking proper care of himself or of his property * * *." The terms "idiot, imbecile and lunatic" were not particularly defined in §10989 GC, but are now so defined in §10507-1 GC. In ▮▮▮▮▮▮ ▮ this latter section "the terms 'insane and lunatic' include every species of insanity or mental derangement". (Emphasis ours.)

Sec. 10507-1 GC, was enacted by the Legislature in the light of judicial interpretation of former analagous §10989 GC. In 1923 the Supreme Court had held in Schafer v Haller, Guardian, 108 Oh St 322, Syl. 1, that,

"The provision of §10989 GC, making physical disability or infirmity a ground for the appointment of a guardian of the property of a person mentally competent but physically incompetent, is an unwarranted abridgement of the liberty of such person and an unwarranted abridgement of his right to acquire, possess and protect property, and is in violation, in that respect, of Section 1, Article I, of the Constitution of Ohio."

The effect of this decision is to render unconstitutional any act authorizing the appointment of a guardian for a person, upon the basis of his physical disability or impairment only. The Legislature recognized its inability to make physical infirmity alone the basis of the appointment of a guardian and inserted in §10507-2 GC a provision whereby the Probate Court could name a guardian for an incompetent because of physical disability or infirmity if the incompetent consented to the appointment, the effect of which would be a waiver of the incompetent's constitutional right.

It follows then that in this case, wherein it appears that, not only did the alleged incompetent not consent to the appointment of a guardian for him, but opposed it, the only basis for the appointment which would give it any force or standing in law is that Mr. Jacobs is an incompetent because of mental disability or infirmity.

Sec. 10501-56 GC, effective January 1, 1932, and controlling the rights of appellant here was not materially changed from its former form in §11206 GC, and in no particular in the controlling language in the instant case. The sections provide that,

"Appeal may be taken to the Common Pleas Court, by a person against whom it is made, or whom it affects, from any order, decision or judgment of the Probate Court * * * in proceedings to appoint guardians or trustees for idiots, lunatics, imbeciles or drunkards."

It will be noted that the word "incompetent" does not appear in either of the sections.

It is of interest to observe that the review in Schafer v Haller,

Guardian, supra, was by appeal (as then known, now appeal on questions of law and fact) to the Common Pleas Court and the authority for such appeal was grounded upon §11206 GC.

In the determination of the material and substantial procedural rights of the ward in this case, nice distinction between the term "incompetent" and the term "insane person or lunatic" is not justified and can not be made.

It is humane and in keeping with the trend of the times to authorize the designation of one whose mind is in such a state that he requires a guardian, as an "incompetent" instead of a "lunatic" or an "insane person", but inasmuch as the incompetency which clothes the Probate Court with jurisdiction to name a guardian, against his will, must be mental incompetency, the determination when made is to all intents and purposes synonymous with a finding that the incompetent is insane or a lunatic. This necessarily follows because the terms by which these words are defined in the language of the statute include "every species of insanity or mental derangement". If one suffers mental disability or infirmity he is mentally deranged. There is a variation from the normal state of the mind, and as said by Judge Robinson in the opinion in Schafer v Haller, Gdn.,

"The function of the state in exercising a guardianship over the property of one of its defective subjects, whether defective by reason of age, birth, accident or disease, arises out of the fact that such defective is lacking in the power to exercise his will which we have come to term 'mental capacity to manage'."

Appellant cites Romell, et al. v Romell, 18 Oh Ap 31, which held that a decision of the Probate Court refusing to appoint a guardian for a person upon an application upon the alleged grounds of incompetency by reason of advanced age was appealable to the Common Pleas Court. The appeal there was from an order refusing to appoint the guardian and thus is not the same question presented here, which relates to proceedings to appoint a guardian. The statute is silent as to the right of appeal from an order refusing to appoint. The cited case goes further than is necessary in the instant cause. However, the reasoning in the opinion of Judge Chittenden is, in our judgment, sound in so far as it may be related to the purpose of §10501-56 GC, in the particulars under consideration in this case.

The Court cited Trumpler, Admr., v. Royer, 95 Oh St 194-202, to the effect that §11206 required a liberal construction. We also are in accord with this conclusion, although it is not necessary to resort to a rule of construction to give §10501-56 GC, the interpretation which we place upon it. The trend of appellate procedure is to require that it be given liberal construction in favor of the party invoking the right of appeal. This is clearly discernible in the new appellate act effective Jan. 1, 1936, 116 v 104. The Supreme Court has evinced a purpose to so construe this act as late as the opinion in Mosey v Hiestand, Trustee, 138 Oh St 249, and Couk v Ocean Accident and Guarantee Company, 138 Oh St 110.

Appellee cites In re Guardianship of Watts, 60 Oh Ap 307, wherein the head note reads:

"An order of the Probate Court appointing a guardian for an incompetent person is not appealable on questions of law and fact to the Common Pleas Court under §10501-56 GC."

The facts in this case disclose that an application was first filed with the Probate Court for the appointment of a guardian for Watts, "an incompetent person by reason of advanced age". Watts, in writing, consented to the appointment. He was adjudged an incompetent and a guardian was appointed and bond furnished. Thereafter the order was vacated. Some fourteen days following the appointment of the guardian a second application was filed by a person other than the one who filed the first, alleging that "Watts is incompetent and by reason thereof is incapable of taking care of or preserving his property". The Probate Court re-entered its prior finding of incompetency and the former named guardian was reappointed. To this order the applicant for the appointment, one Dale Powers, who had also sought unsuccessfully to be made a party, excepted. Watts did not except. Thereafter both Watts and Powers moved for a new trial which was overruled, the appeal de novo noted and the cause was so heard in the Common Pleas Court, which refused to appoint the guardian for Watts.

In the Common Pleas Court the appellant moved to dismiss the appeal on questions of law and fact which motion was overruled and this question was presented and determined on review in the Appellate Court. The head note is general and to the effect that an appeal on questions of law and fact

is not permitted from the appointing of a guardian for an incompetent person and is contrary to our conclusion in this case.

It will be noted that Judge Sherick in the opinion In re Watts, stresses the fact that "Watts, having promoted and consented to the adjudication of incompetency and the guardian's appointment, can not now be found to be arbitrarily deprived of his liberty or property", and calls attention to the fact that Watts had in writing consented to the appointment. Watts, being the only party who could, under the order of the court, prosecute the appeal, there was nothing presented to the Common Pleas Court but an appeal on questions of law and fact from an order appointing a guardian upon a finding of incompetency, which could have been for physical reasons only and which appointment was specifically authorized by the terms of §10507-1 and 10507-2 GC.

We can readily support the judgment of the Appellate Court in Re Watts because the only order for review was one which could properly have referred to an appointment for physical infirmity, only, with the consent of the person for whom the guardian was appointed. The incompetent clearly could not come within the terms "insane person" or "lunatic" and §10501-56 making no mention of incompetency and nothing therein set forth referable to incompetency for physical infirmity only, it may be said that there was no basis for an appeal from an appointment upon such ground. Our proposition is that the appellant in this case may avail himself of the provision of §10501-56 GC, because upon the adjudication he is brought within the express terms of the statute and his appointment was

grounded upon the fact that he, under the language of §10507-1 GC, when designated an incompetent because of mental infirmity brought about by advanced age, was found to be an insane person or lunatic. This designation in the law is in complete harmony with every medical definition of insanity or lunacy which has come to our attention. Senile dementia is recognized by alienists as a form of insanity or impairment of the mental faculties.

The judgment will be reversed and cause remanded.

BARNES, J., concurs. GEIGER, PJ., dissents.

GEIGER, P. J., dissenting.

Sec. 10507-1 GC, contains certain statutory definitions, as used in this act, among them being that the term "incompetent" means any person who by reason of advanced age, improvidence or mental or physical disability or infirmity is incapable of taking proper care of himself or his property. The terms "insane" and "lunatic" are defined as including every species of insanity or mental derangement.

' The Probate Court in its entry of appointment used the words of §10507-1 GC, defining "incompetent". This becomes of importance for the reason that the appellants urge that inasmuch as this statute provides that the terms "insane" and "lunacy" "include every species of insanity and mental derangement" that such general definition includes the term "incompetent" as specially defined.

Sec. 10501-56 GC, under the caption "CASES APPEALABLE FROM PROBATE COURT TO COMMON PLEAS COURT" provides that appeal may be taken to the Common Pleas Court by a person against whom it is made from any order, decision or judgment of the Probate Court in a large number of enumerated proceedings, the last of which is "or in proceedings to appoint guardians or trustees for idiots, lunatics, imbeciles or drunkards". The cause so appealed shall be tried, heard and decided in the Court of Common Pleas in the same manner as though the Court of Common Pleas had original jurisdiction thereof. This section does not include the defined word "incompetent".

Sec. 12223-23 GC, under the caption "APPEALS ON QUESTIONS OF LAW TO COMMON PLEAS COURT" provides that a judgment rendered or final order made * " by any tribunal inferior to a Court of Common Pleas "may be reversed, vacated or modified by the Common Pleas Court upon an appeal on questions of law."

· This case revolves around the question as to whether or not, by virtue of the liberalizing §10214 and the definition of the term "insane" as appearing in §10507-1, the provisions of §10501-56 include a person found by the Probate Court to be "incompetent". The term "incompetent" as defined in §10507-1 does not appear in §10501-56. I am of the opinion that inasmuch as the Legislature has definitely defined the condition that may make one "incompetent" which definition the Probate Court adopted in its order appointing a guardian, the omission of that classification in §10501-56 is a definite declaration that in the case of the appointment of a guardian of an "incompetent" there should be no appeal on questions of law and fact permitting a trial de novo. The right

to review such cases is confined to the provisions of §12223-23 as held by the Court below.

See **In matter of Watts, 60 Oh Ap 307.**

I am not persuaded that the majority has effectively answered the authority of that case. It seems to me to be clearly applicable to the case at bar.

I am of the opinion that the Court below committed no error in dismissing the appeal.

Judgment of the Court below should be affirmed.

## APPLICATION FOR REHEARING

No. 3273. Decided Sept. 30th, 1941.

BY THE COURT:

Submitted on application of appellee for rehearing for the reason that the Court's decision is contrary to law and in conflict with the judgment in **In re Guardianship Watts, 60 Oh Ap 307.**

We discussed this case at length in our former decision and concluded that although the law of the headnote was contrary to the principle which we held to be controlling, the judgment itself upon the narrow question presented was not in conflict with ours.

The application will, therefore, be denied.

The application may also be considered as a motion to certify our judgment as in conflict with the cited case. This motion will also be overruled.

HORNBECK and BARNES, JJ., concur.

GEIGER, PJ., dissents.